1, 3, 3, 2, 6, 1, Larry Shreck, R and L Carriers, Inc. at all. Argument is not to be seen. 15 minutes to decide. Mr. Freaking, for appellant. May it please the court. My name is Randy Freaking, along with John Allison. We represent the appellant, Larry Shreck. I'd like to reserve five minutes, Chief Judge Patchelder, for rebuttal. This case presents two critical issues. The first issue is an evidence question, and that is whether the trial court improperly excluded critical, relevant evidence that supported the appellant's claim that he was the victim of disability discrimination and FMLA retaliation. And the second issue is one of interpretation of the Family and Medical Leave Act. And that issue is whether the trial court improperly granted summary judgment on appellant's claim that the appellee interfered with his right to return to work after his doctor released him to return to work on May 29, 2009. And we believe that the answer to this question is controlled by Sixth Circuit precedent of Hodge v. Honda of America. In Hodge, this court affirmed summary judgment in favor of the employee on very similar facts. Before you get into the merits of it, have you preserved the issue? We have, Your Honor. We raised it in the court below. Did you object to the magistrate's report in regard to that claim? We did not object to the magistrate's report. Aren't you required by the court rules to object? Otherwise, you waive the claim? I do not believe it's a waiver, Your Honor. A forfeiture? It's not a waiver. It's a forfeiture? I don't think it's a waiver or a forfeiture. We brought it back before the trial court, and the trial court looked at it again before trial, and it essentially affirmed the magistrate's ruling. So you concede you did not object to the magistrate's report? We did not object to the magistrate's report. And you concede that the rule provides that you must object? Otherwise, it's waived? Yes. Okay, but your argument is because the district judge addressed it again that somehow cured the deficiency? It cured the deficiency. Okay. Do you have some precedent on which he may say that? I don't have any precedent for that, but he did address it again. As a matter of fact, he gave a jury instruction that at least related to the issue, and then he heard oral argument on our motion for a directed verdict after he allowed us to present evidence on the issue. Now, he did not submit the issue to the jury. I mean, if a judge denies something two or three times, does that somehow undo the first denial or something? I don't quite understand it. I mean, the more he denies it, how does that say it wasn't denied originally? I mean, I don't understand the argument. Okay. Well, maybe you'd explain it. No, I think when he looked at it again and they objected and he affirmed the magistrate's order and then we raised it again pre-trial and he considered it and essentially affirmed the magistrate's order. All right. The other issue is an evidentiary issue, and you concede that we were due for an abuse of discretion? Yes. So you're claiming that the judge abused his discretion in regard to the scope of the testimony that he allowed Mr. Rhodes to give? Yes. He gave some limited testimony. He was permitted to give some limited testimony, and then we proffered the remainder of the testimony. Tell me how he abused his discretion on that. Well, the testimony, and we think the case that's most directly on point is Robinson v. Runyon, and in that case the court held that in weighing the danger of unfair prejudice vis-à-vis relevance, you should give maximum probative value to the proponent and weigh that against the minimum reasonable prejudicial value to the opponent. The testimony from Mr. Rhodes that was proffered, he was a senior director of human resources at the time of Mr. Schreck's termination. He testified on five basic things that I believe are relevant to Mr. Schreck's claims and relevant to the atmosphere of the corporation. Number one, Mr. Rhodes testified that the company had a contempt for individuals with health issues. Those health issues related directly to him, lowering the age of the workforce because of health concerns and not returning people from FMLA, as was the case with Mr. Schreck. Number two, the HR staff that reported to Mr. Rhodes complained about the company's refusal to allow people to return from FMLA leave. Number three, the vice president of human resources. Mr. Copsey told Scott Armour not to return people to work after their FMLA leave. Number four, the defendant's general counsel, when confronted by Mr. Rhodes in his role in human resources, said we don't care about complying with the state or federal employment laws because we've never had to write a check large enough. And number five, Mr. Rhodes testified that the company's attitude went so far that Ms. Curl, Karen Curl, who was a manager in human resources, was told to alter or destroy documents to help them in litigation. Now, obviously it's relevant to Mr. Schreck's claims for really three reasons. Number one, that testimony is circumstantial evidence that goes to intent and motive, and intent was critical on Mr. Schreck's disability discrimination claim. Its intent and motive are at the heart of every employment discrimination case, and this evidence tended to prove that they intentionally ignored federal and state employment discrimination laws because they had never had to write a check large enough. They had a disdain for federal and state employment laws. Mr. Rhodes, we also proffered testimony from Mr. Rhodes about their disdain for age discrimination laws, sex discrimination laws, anti-union discrimination laws. Those matters aren't in the case, though, sex and age. That's correct. Age was, but it was something else. That's correct. You're saying, even though it's not directly applicable, that it's tangentially about their motives as to other types of federal laws? Right. I think if an employer or a corporation shows a disdain for several of the employment discrimination laws, that supports an inference that perhaps they have a disdain for the other employment discrimination laws, and in this case he also testified on those five items I just talked about that related to the FMLA law, disability law, et cetera. It's the background evidence that's critical for a jury to understand. Just like the Robinson case, where what was excluded was an application for employment that was posted on the law, while it was not specifically applicable to the plaintiff, but it showed the atmosphere of the employer when they condoned that. And they reversed that verdict on the basis that two exhibits were excluded that showed an approval of discriminatory behavior. It's a 401 judgment call of whether the danger of unfair prejudice outweighs whatever relevant value here, and that's usually up to the trial judge, isn't it? It's usually up to the trial judge, and that's why it's an abuse of discretion standard. Now, when the trial judge gave his reasoning at page 26 of document 114 in the record, he stated something that didn't quite make sense to me at the time. He said the prejudicial effect is beyond belief as far as Mr. Schreck's rights are concerned, quote, unquote. I think the unfair prejudice is looking at the unfair prejudice to the defendant, and obviously this testimony so much revealed their attitude toward federal employment discrimination laws, and of course it was prejudicial. The question is whether it's unfairly prejudicial. This was very good evidence in support of Mr. Schreck's claims, obviously, and so it's prejudicial, but the question is whether the relevance is outweighed by the prejudice, and I'm not so sure they've ever articulated the prejudice to them other than they say it's hearsay. Well, these are statements by party opponents. This is the associate general counsel of the corporation. This is the vice president of human resources. But hearsay is hearsay. Isn't this individual who is at issue here that's the declarant, wasn't he himself laid off? He was laid off. And wasn't he just expressing an opinion based upon? No. Excuse me. I'm sorry. Wasn't he expressing an opinion based upon what he had heard in the general area? No, he testified he directly heard this from the associate general counsel. I think that's what I just said. What he heard in the general vicinity and time frame that this was going on. Right. And he was not a person who had some authority over who was terminated, who wasn't, who was laid off. That was another individual. See, I'm looking at Griffin versus Finkbinder, and I'm looking at Mendelsohn, Sprint versus Mendelsohn, where they don't let this broad net be cast and find somebody that can come in here and tell us what his opinion is and what he's heard. They narrow it down to a temporal and geographic proximity, whether the organization knew the decisions of others. And you seem to be taking a position that there is no limitation on who you can bring in, and that's what troubles me. Okay. I'm sorry. And didn't that judge let in some of the testimony from this witness? He allowed in some testimonies, yes. Yes. Just say yes. He did. But he kept out some testimony because he felt the prejudicial value outweighed the probative value. Isn't that a judgment call? It's a judgment call subject to the abuse of discretion standard. Where was his discretion abused then? Put yourself in the judge's shoes for a second. Because the evidence that we proffered was temporarily related. It was at the same time as Mr. Schreck's employment decision. It was from the same individuals that had control over the termination decision of Mr. Schreck. It was the Associate General Counsel. It was the Vice President of Human Resources, Mr. Fishbaugh. It was Mr. Armour, and it was Ms. Curl. So it's temporarily related. It involves the same people that are familiar with the employment decisions. Mr. Armour was in charge of the FMLA leave, and he repeated this comment. And it's admissible. Anything you hear, I guess, is hearsay, but it's admissible when it's made by a party opponent. And these are statements by a party opponent at the same time as they are considering the termination of Mr. Schreck. And the trial judge was very careful to make sure that we had the time frame correctly. That each time Mr. Rhodes testified and provided his answers, he was asked, when was that statement made? And he said, March, April, May, June of 2009. It's a 26- or 27-page transcript of the proffered testimony. It's temporarily related. It's directly relevant to the state of mind of the corporation with respect to the circumstantial evidence that we need in all employment discrimination cases. And I think with that, my time is up, subject to rebuttal. Thank you very much. Thank you, counsel. Good afternoon, Your Honors. Tony White for the appellee. Counsel, may it please the Court. Your Honors, I think it's important to remember that at the root of this appeal sits a jury verdict in favor of Arnell that required only three hours of deliberation, that even the appellant on this appeal does not challenge as being unsupported by the record. What the appellant does challenge is the trial court's decision to not entertain further the FMLA interference claim that had been dismissed in summary judgment, first by the magistrate through her report and recommendation, and second by the trial judge when the trial judge adopted that reported recommendation. At the summary judgment phase, appellee clearly challenged the sufficiency of the appellant's FMLA interference claim on all grounds, and the appellant defended it but did not defend it with any theory that approached the theory that eventually came to light in the second day of trial, which the appellant now asserts in this court here on this appeal. And when clearly this argument was not asserted and made at the summary judgment level, the magistrate judge did not consider it for that purpose, for that reason, and when the magistrate judge's report and recommendation was adopted by the district judge, the argument asserted by the appellant here in this court was not considered at that point either. In fact, the appellant, as the court has noted, did not object to the magistrate judge's report and recommendation dismissing the FMLA interference claim which he concedes before this court, and that is fatal as well, an additional fatal factor when we consider now the sufficiency of the FMLA interference procedural argument that the appellant would assert before this court. So I would suggest to your honors that before you ever need to reach the merits of this FMLA interference theory, new theory that the appellant would assert, that you may find in this record that that argument has been either forfeited or waived based upon the failure to raise it in summary judgment when that claim was challenged and the failure to object to the magistrate judge's report and recommendation that called for the complete dismissal of that claim at the summary judgment stage. Briefly on the merits of that particular FMLA interference claim, I think it's important also to recognize that the merits of the asserted claim are clearly defeated in this court's precedent. The FMLA interference claim would only survive if Mr. Schrack, the appellant here, would not have been terminated in the reduction in force, which the jury here conclusively found on the facts, took place in the reduction in force had he not been on FMLA leave. At the core of the jury's findings in this case, however, is that Mr. Schrack was in fact terminated in a reduction in force and that he was selected for termination in the reduction in force because he was the least senior member of his department. Now because of that, we can establish that had Mr. Schrack been at the job in May of 2009, when the reduction in force impacted his department, he would have in fact been terminated then but for the fact that he was on FMLA leave, which is the only reason why he was not terminated when the reduction in force impacted his department. Under this court's precedent, it's clear that the appellant has no right to restoration if he would have been terminated but for the fact that he was on FMLA leave. Given that, when Mr. Schrack returned from FMLA leave approximately June 1, he had no right to restoration and R&L was able to terminate him at that point pursuant to the reduction in force, which it did. Now turning to the evidentiary question that has been asserted also in this case, the court has properly noted and the appellant has conceded this is an abuse of discretion standard. I think it's important to remember at the outset that the evidence established and the jury was necessarily concluded that there is only one decision maker here. One person decided that Mr. Schrack was to be terminated in this reduction in force as the least senior member and that person was Dale Ellenbarger, his supervisor, his immediate supervisor. None of the instances that Mr. Rhodes was proffering to the court that the court ultimately rejected had anything to do with Mr. Ellenbarger. Not one of the things that Mr. Rhodes sought to offer to this jury that the trial court used its discretion to say we're not going to present that to the jury had anything to do with the person, the only person, who chose to terminate Mr. Schrack in this reduction in force. That was a very important part of the trial court's determination and exercise of discretion to craft a solution to what Mr. Rhodes could or could not testify to. And that is exactly what the trial court did. Craft a delicate and I think properly drawn conclusion that allowed Mr. Rhodes to testify to certain things but excluded his testimony as to other things. And that was the exercise of discretion that we believe was appropriate. Certainly, Mr. Rhodes came into this litigation as someone who had his own ax to grind. And these were all things that the trial court properly could consider as it evaluated and weighed which evidence Mr. Rhodes could testify to and which evidence he could not testify to. Mr. Rhodes came in with his own lawsuit against R&L pending for wrongful termination in the exact same reduction in force that caused Mr. Schrack's termination from R&L. Does Mr. Rhodes' relationship or lack of same with the company really go to the question of the relevance of his testimony, or is that something for the jury to weigh in deciding whether to believe him or how much weight to give his testimony? Ultimately, Your Honor, Mr. Rhodes' testimony was allowed before the jury in some respects, particularly targeted to his FMLA, his experience with Mr. Schrack, which was very limited, his experience with R&L with respect to Mr. Schrack's FMLA leave, and his experience with the R&L RIF and RIFs in general. Ultimately, the jury makes that determination on the subjects by which Mr. Rhodes was allowed to testify. But also the trial court has to consider that issue under Rule 404B into making a determination about if we consider this for what we believe it is, which is essentially prior bad act testimony by R&L, asserting that because R&L has done these amorphous, generalized, unspecified, unproven things, according to the former senior director of human resources, all these terrible things, it likely did all this terrible stuff that the plaintiff would like to assert to Mr. Schrack. So it's essentially a 404B analysis, and 404B does require the trial court, doesn't necessarily require, it allows the trial court to make a determination of credibility with respect to the witness in deciding what portion of the witness's testimony should be allowed. Did the trial court really go at it from a 404B perspective? I don't believe that there is sufficient evidence in the record to establish explicitly that the trial court went at it in a 404B analysis. But I would suggest to your honors that if there is a proper way to interpret the trial court's ultimate decision, under the federal rules, in an abuse of discretion standard, that this court should give the trial court that leeway in allowing it to interpret that evidence and those situations under Rule 404B, unless there's something in the record that explicitly said the trial court did not interpret this testimony and this potential evidence under Rule 404B. And to my memory, your honor, there is certainly nothing in the record that the trial court said, I am not considering this evidence under the question of Rule 404B. But certainly there's nothing that says that he in fact affirmatively is making this determination under that particular rule of evidence. So when we do consider Mr. Rhodes' credibility, I think it is important to keep that in mind and to understand that he did have a bit of an axe to grind here, and he was in a situation that did advance his own self-serving interests. Did we consider his credibility? We are supposed to assess a witness's credibility in this court? Is that what you're saying? No, your honor. What I'm suggesting is that it's appropriate for this court to grant the trial court the discretion. I'm not sure the trial judge is supposed to assess the credibility of the witnesses either. I think that's a jury function, isn't it? I think under Rule 404B, your honor, the trial court is allowed to take into account the witness's credibility when making a determination of what prior bad act testimony would be allowed for purposes of testimony. Their argument is they think that this is relevant evidence as to other types of laws that they administered. I mean, usually 404B bad act evidence is totally unrelated bad acts that have occurred, and there is no relations other than this person has done bad things that have nothing to do with the case. Here, at least they make an argument that it has something to do with their motive, that they don't like federal workplace laws, period. And, you know, FMLA is one of them, but they don't like the other laws either, and that's their motive. I mean, at least they come up with a theory as to how they have relevance here. Yes, your honor, the appellant does have a theory. However, that theory is as broad as you could possibly create to allow evidence such as this to be coming in front of a jury. I would suggest, respectfully suggest to the court, that the appellant's theory in practice essentially makes no rule because it would be hard pressed for a good counsel, like the appellant's counsel here in other cases, to not be able to come up with such a broad theory that would allow that testimony, therefore, under this court's decision, should that be the way the court rules, to bring that evidence before the jury and allow such prior unrelated bad act or, you know, other instance testimony to impact the jury in substantial ways that don't really have any impact, that don't really have any relevance to the actual decisions that were made here by one individual who is not the subject of any of the alleged conduct that the witness wants to testify regarding. Was there any evidence, either in this proffer or otherwise, that would have demonstrated that the individual who was in charge of making the RIF decision knew any of these various things that Mr. Rhodes wanted to testify to? Your Honor, my belief is there is no such testimony regarding that. The person who made the, the only person who made the decision to terminate Mr. Schreck in this reduction in force was the director of telecommunications in his department. His job was limited to running that department of, I believe, 10 to 12 people, involved installing security systems and burglar alarms and fire alarms throughout R&L's various facilities around the country. I guess what bothers me a little bit is if, if, if in fact, just let's assume for the moment the truth of the testimony that was proffered, if in fact there was an atmosphere in this company of getting rid of anybody who might be a, a drag on the company's health benefits, getting rid of people who were, you know, over whatever that cutoff was, 35 years, 32 years old, whatever, those kinds of things, if, if in fact that were pervasive in the company, wouldn't it be reasonable to think that perhaps the person in charge of making this employment decision would have been influenced by that? Your Honor, I think you've just outlined what is the danger of the appellant's request here to allow such evidence before the jury, because the actual evidence in the case, the hard direct evidence in this case was that the only decision maker, Mr. Ellenbarger, had no knowledge of any quote-unquote pervasive atmosphere at the company regarding anything, regarding anyone, any characteristic, anything. He testified and the jury ultimately accepted that he made this decision begrudgingly over a period of months doing everything he could to prevent Mr. Schrack from losing his job in this reduction in force because he was a member of his team. He worked hard and diligently to find ways to keep him from losing his job. And he only made the decision because he had a reduction in force that he had to implement. And nobody told him who to choose. That it was totally and completely left up to him and his criteria was solely seniority and that Mr. Schrack was the least senior. That was the only testimony. Allowing this testimony before the jury would allow them to disregard all of this direct evidence and direct testimony from the only person who made the decision and make some leap of unspecified faith and illogical conclusion based upon what they heard R&L does in its normal level of evilness in the back laboratory thinking about how it's going to stick it to its employees who don't meet certain criteria. That is the exact danger, Your Honor, that this trial judge faced. And he crafted a solution that allowed Mr. Rhodes to testify about his direct knowledge as to the appellant, his direct knowledge as to the reduction in force, and even allowed Mr. Rhodes to testify about his general experience with respect to reductions in force, arguably beyond the scope of what he should have been testified to. But I think the trial judge there, using his discretion to allow more testimony to give the appellant some way to establish Mr. Rhodes' relevance to this jury. When you look at the difficult decision this trial judge had to face in trying to craft a solution to the Rhodes testimony, I think it is fair to say that the trial judge did an excellent job in exercising discretion and allowing Mr. Rhodes to testify about things that directly impacted Mr. Schrack and the case, the riff, and his termination, and no more. And I would respectfully suggest that that was not an abuse of discretion. Thank you, Counsel. Thank you, Your Honor. Butler. Thank you. Let me address what's been characterized as a broad theory of our case. Our case is not based on some broad theory that they had some anti-employment discrimination law bias. Specifically, their bias was against people that had health problems, that took FMLA leave. Now, we buttressed that with corroborating evidence that they also had a bias against almost every other employment discrimination law, which would make that testimony about the health condition and the FMLA much more believable. Now, the interesting fact in this case and why Mr. Rhodes' testimony was critical, it would explain to the jury what happened here. Because if you accept what the company just told you, we made the decision in May of 2009 to lay off Mr. Schrack. Mr. Schrack presented his return to work slip on May 29th. If he had been laid off in the middle of May, as they contended, why didn't the manager of employee benefits, why didn't the vice president of human resources say, sorry, Mr. Schrack, we'd love to return you pursuant to the FMLA, but you were laid off two weeks ago? No, they did not do that. They waited three and a half weeks after he gave a return to work slip on May 29th. They asked for clarification. His doctor clarified it on June 12th, and there was radio silence for 11 days. Then Mr. Schrack sends them an email that says, I've been returned to work. Where is my job? And that's where Mr. Ellenbarger surfaces and says, sorry, I laid you off back in May. Mr. Rhodes' testimony would help explain credibility on that very issue. It would help explain the company's motives, their intent. It's hard to believe that when, of course, they want to run to Mr. Ellenbarger, because everybody else, according to Mr. Rhodes, knew. Mr. Rhodes actually spoke to everybody else in human resources that was relevant to this. Mr. Armour, Mr. Copsey, Ms. Curl, and the associate general counsel. Now, they say he was laid off in May. There was no documentation of that layoff. Mr. Rhodes testified that Ms. Curl was instructed to alter or destroy relevant documents. Part of the record is a June 2nd layoff list. Mr. Schrack's name was not on the layoff list. Now, you can decide, a jury should be able to decide, is it likely that Ms. Curl was instructed to alter documents? Is it believable that they knew about this reduction in force, and yet it took them a month to tell Mr. Schrack after they hassled him about his FMLA leave? As a matter of law, they should have reinstated him on June 1st. And if they weren't going to reinstate him on June 1st because he was laid off in the middle of May, they would have simply told him that. And that testimony goes to the heart of the case. Mr. Rhodes' testimony was very, very prejudicial to their defense. Very prejudicial. But it was not unfairly prejudicial because it went to the heart of the matter. Did they have a disdain for people with health problems? Did they have a disdain for people that exercise their rights under the FMLA? Mr. Rhodes was the Senior Director of Human Resources, and they were permitted, in part of the testimony that was allowed in front of the jury, they were permitted to ask Mr. Rhodes, have you also sued the company? So that's what Robinson is all about, is if this testimony is prejudicial to them, any unfairness can be cured by effective cross-examination of Mr. Rhodes, bringing out these points, et cetera. And so this testimony is so much more than the evidence that was excluded in the Robinson case, which resulted in a remand. It's so much more than the Risch case. Judge Griffin, you were on the Risch case, and what you found to be a problem in the Risch case was that the alleged comments were remote in time, three, four years earlier, and the plaintiff could not identify who made the statements. That was your criticism and your dissent in that case. Here we have the Senior Director of Human Resources saying, I heard this out of the mouth of the Associate General Counsel, out of the mouth of the Vice President of Human Resources, out of the mouth of the manager in charge of FMLA leave. There can be no greater relevant evidence when you're looking at the motive and intent, and particularly this unexplained silence between the middle of May, when they later claimed they made their decision to lay him off. They didn't tell him that when he submitted the return-to-work slip on May 29th. They didn't tell him that when he came into the office on June 1st. They didn't tell him that when they asked for clarification. They didn't tell him that when his doctor gave the clarification on, I believe it was June 12th, saying, yes, I'll tell you again, he can safely perform his job. They did not tell him that between June 13th and June 21st or 22nd. It took Mr. Schreck to say, why haven't you returned me to work? Now, Mr. Rhodes' testimony should be given some weight by the jury. Fundamentally, it's a credibility issue. In deciding credibility, you can look at whether or not this company had a disdain for people that were out on FMLA leave or had health problems that were serious enough to merit FMLA leave. And for those reasons, we respectfully thank you. Thank you. The case will be submitted. Clerk may call the next case.